IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| WAYNE ANDRE GRANT, | ) | CASE NO. 1:22-CV-01805-JPC |
| | ) | |
| Plaintiff, | ) | JUDGE J. PHILIP CALABRESE |
| | ) | UNITED STATES DISTRICT JUDGE |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| COMMISSIONER OF SOCIAL | ) | JENNIFER DOWDELL |
| SECURITY, | ) | ARMSTRONG |
| | ) | |
| Defendant. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |

## I.      INTRODUCTION

Plaintiff Wayne Andre Grant ("Mr. Grant") seeks judicial review of the final decision of the Commissioner of Social Security denying his applications for Period of Disability ("POD") and Social Security Disability Insurance Benefits ("DIB"). This matter is before me pursuant to 42 U.S.C. §§ 405(g) and Local Rule 72.2(b). (*See* ECF non-document entry dated October 7, 2022). For the reasons set forth below, I RECOMMEND that the Court AFFIRM the Commissioner's decision.

## II.     PROCEDURAL HISTORY

On September 18, 2020, Mr. Grant filed his applications for POD and DIB, alleging an onset date of December 12, 2019. (Tr. 147-150). In his Disability Report, Mr. Grant listed the following conditions that he claimed prevented him from working: injury to spine and left knee injury. (Tr. 173).

The Social Security Administration ("SSA") denied Mr. Grant's applications initially and upon reconsideration. (Tr. 66, 72, 91). Mr. Grant requested a hearing before an administrative law

judge ("ALJ"). (Tr. 96-98). The ALJ held a telephonic hearing on October 6, 2021, at which Mr.

Grant was represented by counsel. (Tr. 32). Mr. Grant testified, as did an independent vocational

expert ("VE"). On November 12, 2021, the ALJ issued a written decision, finding that Mr. Grant

was not disabled. (Tr. 12). The ALJ's decision became final on March 21, 2022, when the Appeals

Council declined further review. (Tr. 1).

On October 7, 2022, Mr. Grant filed his Complaint, challenging the Commissioner's final

decision. (ECF Doc. No. 1). Mr. Grant asserts the following assignments of error:

(1)  The ALJ erred when he failed to find that the opinions of the treating source were consistent with and supported by the medical evidence and failed to incorporate the stated limitations into his RFC.

(2)  The ALJ committed harmful error when he failed to properly apply the criteria of Social Security Ruling 16-3p and failed to find that the intensity, persistence and limiting effects of Grant's symptoms, including pain, precluded him from engaging in substantial gainful activity at the light level of exertion on a full-time and sustained basis.

(3)  The ALJ committed harmful error at Step Four of the Sequential Evaluation when he found that Grant could perform his past relevant work as a computer-aided design technician.

(ECF No. 6, PageID # 370).

## III.  BACKGROUND

### A.  Personal, Educational, and Vocational Experience

Mr. Grant was born in 1959 and was 60 years old on the alleged onset date. (Tr. 67, 149).

He is married. (Tr. 149-50). Mr. Grant has three years of college. (Tr. 46). He previously worked

as a computer-aided design technician and an inventory clerk. (Tr. 36, 45).

### B.  Relevant Hearing Testimony

#### 1.  *Mr. Grant's Testimony*

Mr. Grant testified that he stopped working on or around December 12, 2019, after an on-

the-job injury. (Tr. 35). He testified that he was loading something onto the back of a tractor trailer

when he fell off. (Tr. 35-36). Mr. Grant testified that, after the accident, he could not perform his

existing job as a stocker for the Cleveland Clinic due to pain. (Tr. 36). He testified that he continued to stay on light-work detail for two to three months before he went on medical leave, but experienced pain and joint stiffness in his lower back and his hips, as well as tingling in his legs. (Tr. 37). Mr. Grant further testified that when he sits for a long period of time, he feels pressure build up in his back. *Id*. He rated his pain as an eight out of ten. (Tr. 38). He also testified that he has tried therapy, numerous medications, and acupuncture, but he has had difficulty finding relief for his pain. *Id*.

Mr. Grant testified that he cannot sit for more than two hours at a time. (Tr. 40). He also testified if he has been sitting for an hour or so, he will walk around to try and stretch. *Id*. He testified that he has similar difficulties standing for long periods of time. (Tr. 41). Mr. Grant further testified that he tries to minimize the amount of lifting and carrying he does because he cannot bend over due to his back. *Id*.

### 2. *Vocational Expert's Testimony*

The ALJ asked the VE to consider a hypothetical individual with Mr. Grant's age, education, and job history who was limited to light work but could never climb ladders, ropes, or scaffolds; never crawl; frequently balance, handle, and finger; occasionally climb ramps and stairs, stoop, kneel, and crouch; and never be exposed to hazards or engage in commercial driving. (Tr. 52). The VE testified that the hypothetical individual could perform Mr. Grant's past work as a computer-aided design technician but could not work as an inventory clerk. *Id*. The VE next asked if the hypothetical individual could perform past work or other jobs existing in significant numbers in the economy if the hypothetical individual would be off task at least 20% of the time. (Tr. 52-53). The VE testified that limitation would be work preclusive. (Tr. 53).

In response to a question from Mr. Grant's counsel, the VE testified that the computer-aided design technician position was classified as light work both under the Department of

Transportation's guidelines and as Mr. Grant actually performed it. (Tr. 58-59, 62). The VE also testified that if the hypothetical individual were limited to simple, routine, and repetitive tasks due to fatigue and pain, the individual could not work as a computer-aided design technician. (Tr. 53). The VE similarly testified that the hypothetical individual could not perform that position if the hypothetical individual could only stand for two hours in an eight-hour workday. (Tr. 53).

### C.    **Relevant Opinion Evidence**

#### 1.    *Todd Hochman, M.D.*

On January 1, 2020, Dr. Hochman, Mr. Grant's treating physician, completed a physician's report for the Ohio Bureau of Worker's Compensation. (Tr. 343). Dr. Hochman opined that Mr. Grant could rarely to occasionally bend, squat, kneel, twist, turn, or climb. *Id*. Dr. Hochman also opined that Mr. Grant could occasionally lift up to 10 pounds and could occasionally push or pull up to 25 pounds. *Id*. Dr. Hochman further opined that Mr. Grant could work four to eight hours per day, could sit for four to eight hours with breaks, could walk for zero to two hours with breaks, and could stand for zero to two hours with breaks. *Id*. Dr. Hochman also opined that Mr. Grant should be limited to sedentary duty. *Id*.

On June 1, 2021, Dr. Hochman, completed a medical source statement regarding Mr. Grant. (Tr. 329). Dr. Hochman diagnosed Mr. Grant with lumbar strain, right knee strain, and left knee strain, and listed Mr. Grant's symptoms as "back pain." *Id*. Dr. Hochman stated that Mr. Grant's prognosis was fair. *Id*. Dr. Hochman opined that Mr. Grant could sit for 60 to 90 minutes before he would need to get up and could stand for 30 minutes at one time. (Tr. 330). Dr. Hochman further opined that Mr. Grant could sit for between four and six hours in an eight-hour day and could stand or walk for two hours in an eight-hour day. *Id*. Dr. Hochman also opined that Mr. Grant would need to walk around every 60 to 90 minutes of an eight-hour day for a period of five to ten minutes each time. *Id*. Dr. Hochman further opined that Mr. Grant would need to take

unscheduled breaks every 60 to 90 minutes for five to ten minutes at a time. *Id*. Finally, Dr. Hochman opined that Mr. Grant was likely to be off-task 20% of the time or more and would be absent approximately two days per month. (Tr. 331-32).

The ALJ found that Dr. Hochman's opinions were unpersuasive because they were not supported by the objective medical evidence. (Tr. 26). The ALJ also found that Dr. Hochman's opinions were somewhat consistent with each other and the testimony of Mr. Grant, but that they were inconsistent with other record evidence and opinions from other physicians. (Tr. 26).

### 2. Dorothy Bradford, M.D.

On January 5, 2021, Mr. Grant underwent a consultative examination with Dr. Bradford at the request of the Ohio Division of Disability Determination. (Tr. 281). Dr. Bradford opined that Mr. Grant had full muscle strength in all muscles. (Tr. 283). Mr. Grant displayed a reduced range of motion in his lumbar spine. (Tr. 284). He also displayed crepitus and a mildly decreased range of motion in both knees. (Tr. 288). His gait was even and regular, and he displayed no apparent limp, shuffle, or other disturbance. *Id*. Dr. Bradford opined that Mr. Grant likely had spondylosis of the lumbar spine and degenerative joint disease in both knees and needed x-rays of his spine and left knee. *Id*. She also opined that Mr. Grant should be restricted to "light sedentary activity." *Id*.

The ALJ found that Dr. Bradford's opinion was persuasive to the extent it supported a finding that Mr. Grant could perform work at the light level of exertion. (Tr. 25). The ALJ found, however, that Dr. Bradford's opinion was vague to the extent it restricted Mr. Grant to "light sedentary" activity. *Id*. The ALJ also found that Dr. Bradford's opinion was "somewhat" supported by clinical findings and imaging. *Id*. However, the ALJ concluded that the need for a sedentary activity restriction was not supported by some of Dr. Bradford's own clinical findings. *Id*.

### 3. State Agency Medical Consultants

On January 11, 2021, Dr. Diane Manos, a state agency medical consultant, opined on initial

review that Mr. Grant could occasionally lift or carry 20 pounds and could frequently lift or carry 10 pounds. (Tr. 69). Dr. Manos also opined that Mr. Grant could stand, walk, or sit for six hours in an eight-hour workday. *Id*. Dr. Manor further opined that Mr. Grant could occasionally climb ramps, stairs, ladders, ropes, or scaffolds and could occasionally stoop, kneel, crouch, or crawl. (Tr. 70). On April 27, 2021, Dr. Lynne Torello concurred with Dr. Manos' opinions on reconsideration. (Tr. 75-76).

The ALJ found that the opinions of the state agency medical consultants were persuasive in that they supported a finding that Mr. Grant could perform his past work as a computer-aided design technician, but also concluded that additional limitations were necessary to account for the totality of the clinical findings. (Tr. 25).

### D.    <u>Relevant Medical Evidence</u>

On February 6, 2019, Mr. Grant went to Cleveland Heights Hospital, complaining that he had experienced lower back pain for a month after jumping off a loading dock. (Tr. 248). Mr. Grant reported that he had been taking Motrin daily and had been experiencing back spasms at night. *Id*. On examination, Mr. Grant had positive lumbar muscle tenderness, but ambulated well and had good range of motion and a negative straight leg raise test. *Id*. The treating physician diagnosed Mr. Grant with acute bilateral low back pain, with sciatica presence unspecified, and prescribed tramadol and cyclobenzaprine. *Id*.

On February 18, 2019, Mr. Grant presented to a clinic, requesting a physical therapy referral for his lower back and hip pain. (Tr. 245). Mr. Grant displayed full range of motion in his knees and hips, full flexion of his back, no spinal tenderness, and a normal gait. (Tr. 246). He had pain in his right hip with external rotation. *Id*. He was diagnosed with a likely right gluteus medius strain and referred to physical therapy. (Tr. 247).

On April 8, 2019, Mr. Grant went to Beachwood Health Center, complaining of right hip

pain for the past three months. (Tr. 243-44). He reported that he had been using ibuprofen and Flexeril, which had been helpful. (Tr. 244). He also reported that he had never followed up with physical therapy. *Id*. On examination, Mr. Grant had tenderness in his right hip and pain with range of motion testing. *Id*.

On October 1, 2019, Mr. Grant presented to Dr. Hochman, complaining of pain in his back, legs, and knees. (Tr. 304). He also reported intermittent tingling. *Id*. On examination, he displayed some midline discomfort, reversal of the normal lumbar lordosis, and trigger points in the lumbar region. (Tr. 305). He complained of pain from his back and across his hips with a straight leg raise. *Id*. He had more pain with lumbar flexion. *Id*. He also displayed tenderness over the lateral collateral ligaments bilaterally and some pain with stressing of his knees. *Id*. His patellar reflexes were symmetrical, and he had adequate strength throughout his ankles. *Id*. Dr. Hochman diagnosed Mr. Grant with lumbar strain, right knee strain, and left knee strain. *Id*. He recommended that Mr. Grant use heat and ice as needed and released him to perform light duty work as of October 7, 2019. *Id*. Dr. Hochman also prescribed a Medrol Dosepak, Naprosyn, and Flexeril. *Id*.

On October 29, 2019, Mr. Grant again saw Dr. Hochman. (Tr. 303). He reported continued pain in his back that continued to his hips, as well as knee discomfort. *Id*. He also reported that he had returned to light duty work but was experiencing some difficulties. *Id*. On examination, Mr. Grant displayed tightness in the lumbar region, midline discomfort, discomfort with a straight leg raise, pain with stressing, and tenderness over the lateral collateral ligaments bilaterally. *Id*. His patellar reflexes were slightly diminished but symmetrical, and he had more pain with flexion. *Id*.

On December 10, 2019, Mr. Grant presented for a follow-up visit with Dr. Hochman. (Tr. 302). He reported continued back pain. *Id*. He also reported that he was seeing a physical therapist. *Id*. Mr. Grant said that he was performing light duty work and was doing the best he could, but walking on concrete at work exacerbated the situation. *Id*. Mr. Grant displayed midline discomfort

with some spasm in the lumbar region. *Id*. He complained of pain into the hips and proximal lower extremities with a straight leg raise and had more pain with lumbar flexion. *Id*. His patellar reflexes were symmetrical but slightly decreased, and he had some weakness with resisted dorsiflexion throughout the ankles. *Id*.

On December 23, 2019, Mr. Grant underwent a lumbar MRI. (Tr. 341). The MRI revealed normal lumbar alignment. *Id*. Mr. Grant's L3-4 and L4-5 discs displayed mild degenerative desiccation and loss of height. *Id*. The treating physician stated that Mr. Grant displayed multilevel degenerative changes, most prominent on the left at L4-5. (Tr. 342).

On January 12, 2020, Mr. Grant had another follow-up visit with Dr. Hochman. (Tr. 293). On examination, Mr. Grant was positive for back pain that radiated to the left. *Id*. He experienced pain with straight leg raises and extension. *Id*. Dr. Hochman opined that Mr. Grant had limitations that prevented him from returning to his previous position of employment. *Id*.

On January 21, 2020, Mr. Grant had another follow-up visit with Dr. Hochman. (Tr. 301). Mr. Grant reported continued back pain that radiated toward his lower extremities. *Id*. He also reported that his employer was unable to accommodate light duty work. *Id*. On examination, Mr. Grant was in mild to moderate discomfort and had more pain with flexion. *Id*. There were trigger points in the lumbar region, and he displayed pain across the hips into the anterolateral lower extremity with a straight leg raise. *Id*. His patellar reflex was diminished, and he displayed weakness throughout the left ankle. *Id*.

On March 3, 2020, Mr. Grant again saw Dr. Hochman. (Tr. 299). He reported that he was taking gabapentin, naproxen, and Flexeril. *Id*. On examination, Mr. Grant had midline discomfort, pain with extension, and mild pain with flexion. *Id*. He also had mild anterolateral discomfort. *Id*. Mr. Grant's patellar deep tendon reflex was diminished, and he displayed weakness throughout the ankle. *Id*. Dr. Hochman noted that Mr. Grant had seen another physician, who had

recommended medial nerve branch blocks, which insurance had yet to approve. *Id*.

On April 14, 2020, Mr. Grant had a follow-up visit with Dr. Hochman. (Tr. 298). He reported continued back pain, with more pain when he attempted to bend at the waist. *Id*. On examination, Mr. Grant had midline discomfort and more pain with extension than flexion. *Id*. He also had mild anterolateral discomfort and right-sided back pain when he performed a straight leg raise on the left. *Id*.

On May 19, 2020, Mr. Grant again saw Dr. Hochman. (Tr. 297). He reported that his back pain was a seven out of ten on average but sometimes rose to a nine out of ten. *Id*. Dr. Hochman also noted that Mr. Grant was benefitting from physical therapy and that injections had yet to be approved. *Id*.

On June 30, 2020, Mr. Grant had another follow-up visit with Dr. Hochman. (Tr. 296). He reported that his pain ranged from a seven to a nine out of ten, and that it was worse with activity. *Id*. He also reported that medication helped, but that he tried to minimize the amount of medication he took. *Id*. On examination, Mr. Grant had tenderness to the right and left of the midline, with more pain and tenderness on the left side. *Id*. Dr. Hochman reported that Mr. Grant was benefitting from physical therapy. *Id*.

On July 30, 2020, Mr. Grant saw Dr. Hochman again. (Tr. 295). He continued to display pain in his back and his left knee. *Id*. His patellar deep tendon reflex was slightly diminished but symmetrical. *Id*. He reported that medication had provided some relief for his pain. *Id*.

On August 20, 2020, Mr. Grant went to Beachwood Health Center with complaints of left knee pain for over a year. (Tr. 222). He reported that he had been referred for physical rehabilitation but had never gone. *Id*. On examination, Mr. Grant had tenderness over his tibial tuberosity with no induration or ecchymosis. (Tr. 223). The treating physician diagnosed Mr. Grant with hypertension and chronic pain of the left knee and advised him to use heat and to use ice after

activity. (Tr. 223-24).

On September 10, 2020, Mr. Grant had another follow-up visit with Dr. Hochman. (Tr. 295). He presented with back pain that intermittently radiated to the left, left knee pain, and swelling. *Id*. On examination, he had midline lumbar discomfort with tenderness to the left, knee swelling, joint space discomfort, and pain with a straight leg raise and with extension. *Id*.

On October 15, 2020, Mr. Grant went to Cleveland Heights Hospital for evaluation of his knee pain and received an x-ray. (Tr. 317-18). The treating physician noted that examination was limited by his positioning, but mild medial joint space narrowing was suspected, along with a trace suprapatellar joint effusion. *Id*. He received a steroid injection and was referred to physical therapy. (Tr. 321).

On December 3, 2020, Mr. Grant had another follow-up visit with Dr. Hochman. (Tr. 294). He reported continuing back and knee pain. *Id*. On examination, he continued to have moderate discomfort, some spasms, and pain in his left knee and back when he performed a straight leg raise. *Id*. He also had tenderness over the medial joint space. *Id*. Dr. Hochman reported that Mr. Grant had been benefitting from rehabilitation, but that his request to continue rehabilitation had been denied. *Id*.

On December 10, 2020, Mr. Grant had a follow-up telehealth visit with Dr. Heather Rainey. (Tr. 314). Mr. Grant reported that he had seen some relief since his last visit and was wearing a brace. *Id*. He also reported continued back pain, which he rated as a five out of ten, and depression. *Id*.

On August 3, 2021, Mr. Grant presented to an acupuncture clinic for an initial consultation, complaining of chronic headaches and chronic low back pain. (Tr. 346). On examination, Mr. Grant exhibited tightness in his lower back but a normal range of motion. *Id*. The treating physician opined that Mr. Grant would benefit from acupuncture therapy. *Id*. Mr. Grant presented for a

follow-up visit on August 10, 2021. (Tr. 349). Mr. Grant reported that his symptoms persisted and that his pain was a five out of ten. *Id*. Mr. Grant presented for a third session on August 17, 2021. (Tr. 351). At that time, he reported that his lower back pain had slightly improved. *Id*.

## IV.    THE ALJ'S DECISION

The ALJ first determined that Mr. Grant met the insured status requirements of the Social Security Act through March 31, 2024. (Tr. 17). The ALJ next determined that Mr. Grant had not engaged in substantial gainful activity since December 12, 2019, the alleged onset date. *Id*.

The ALJ further determined that Mr. Grant had the following severe impairments: mild degenerative changes with stenosis of lumbosacral spine; hip and knee with joint strain; plantar fasciitis; hypertension; obesity; and history of carpal tunnel. (Tr. 18). However, the ALJ also determined that none of Mr. Grant's severe impairments, whether considered singly or in combination, met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix I. *Id*.

The ALJ next determined that Mr. Grant had the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b), except for no climbing of ladders, ropes or scaffolds, or crawling; frequent balancing, handling and fingering; occasional climbing of ramps and stairs, stooping, kneeling and crouching; and no exposure to hazards (heights, machinery, commercial driving).

(Tr. 20).

The ALJ also determined that, given Mr. Grant's RFC, he was capable of performing his past relevant work as a Computer-Aided Design Technician. (Tr. 26). Accordingly, the ALJ found that Mr. Grant was not disabled. (Tr. 27).

## V.    LAW & ANALYSIS

### A.    <u>Standard of Review</u>

"After the Appeals Council reviews the ALJ's decision, the determination of the council

becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 Fed. Appx. 315, 320 (6th Cir. 2015) (quoting *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011)); *see also* 42 U.S.C. § 405(g).

"Under the substantial evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (quotation omitted). The standard for "substantial evidence" is "not high." *Id*. While it requires "more than a mere scintilla," "[i]t means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (quotation omitted).

In addition to considering whether substantial evidence supports the Commissioner's decision, the Court must determine whether the Commissioner applied proper legal standards. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g.*, *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.").

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp.

2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)) (alteration in original).

**B.    Standard for Disability**

To establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.130, 404.315, 404.1505(a).

Consideration of disability claims follows a five-step review process. 20 C.F.R. §404.1520. First, the claimant must demonstrate that he is not currently engaged in "substantial gainful activity" at the time of the disability application. 20 C.F.R. § 404.1520(b). Second, the claimant must show that he suffers from a "severe impairment" in order to warrant a finding of disability. 20 C.F.R. § 404.1520(c). A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities." *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets or medically equals a required listing under 20 CFR Part 404, Subpart P, Appendix 1, the claimant is presumed to be disabled regardless of age, education, or work experience. *See* 20 C.F.R. § 404.1520(d). If the impairment meets or equals a listing and satisfies the durational requirement, the ALJ must find that the claimant is disabled. *See Smith-Johnson v. Comm'r of Soc. Sec.*, 579 Fed. Appx. 426, 431 (6th Cir. 2014).

Before considering Step Four, the ALJ must determine the claimant's residual functional capacity, *i.e.*, the claimant's ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. 20 C.F.R. § 404.1520(e). "A claimant's RFC is not a

13

medical opinion, but an administrative determination reserved to the Commissioner." *Golden v. Berryhill*, No. 1:18CV00636, 2018 WL 7079506, at *17 (N.D. Ohio Dec. 12, 2018), *report and recommendation adopted sub nom*, 2019 WL 415250. The ALJ is "charged with the responsibility of determining the RFC based on [the ALJ's] evaluation of the medical and non-medical evidence." *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013). "[T]he ALJ must give some indication of the evidence upon which he is relying, and he may not ignore evidence that does not support his decision, especially when that evidence, if accepted, would change his analysis." *Golden*, 2018 WL 7079506 at *17. However, "[i]t is plaintiff's burden to prove the severity of her impairments, and to provide evidence establishing her RFC." *Lumpkin v. Comm'r of Soc. Sec.*, No. 1:20-CV-1849, 2021 WL 4987607, at *3 (N.D. Ohio Oct. 27, 2021).

At the fourth step, if the claimant's impairment or combination of impairments does not prevent him from doing his past relevant work, the claimant is not disabled. 20 C.F.R. § 404.1520(e)-(f). For the fifth and final step, even if the claimant's impairment does prevent him from doing his past relevant work, the claimant is not disabled if other work exists in the national economy that the claimant can perform. 20 C.F.R. §§ 404.1520(g) and 404.1560(c); *Abbott*, 905 F.2d at 923.

## C.  Analysis

Mr. Grant argues that the ALJ erred in three respects: (1) failing to incorporate the limitations that Dr. Hochman identified into Mr. Grant's RFC; (2) failing to properly evaluate Mr. Grant's subjective complaints of pain; and (3) determining at Step Four that Mr. Grant could perform his past work as a computer-aided design technician. For the reasons set forth below, I conclude that each of Mr. Grant's assignments of error is without merit.

### 1.  The ALJ's Evaluation of the Medical Opinion Evidence

Because Mr. Grant filed his disability claim after March 27, 2017, the "treating physician"

rule, pursuant to which an ALJ was required to give controlling weight to an opinion from a treating physician absent good reason not to, does not apply. *See* 20 C.F.R. § 404.1527; *Merrell v. Comm'r of Soc. Sec.*, 1:20-cv-769, 2021 WL 1222667, at *6 (N.D. Ohio Mar. 16, 2021), *report and recommendation adopted*, 2021 WL 1214809. Instead, the current regulations state that the SSA "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a).

The SSA considers opinions from medical sources under five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors, such as familiarity with other evidence in the claim or with the disability program's policies and evidentiary requirements. 20 C.F.R. § 404.1520c(c). Section 404.1520c(b)(1) specifically provides that "it is not administratively feasible for [the ALJ] to articulate in each determination or decision how we considered all of the factors for all of the medical opinions and prior administrative medical findings in your case record." 20 C.F.R. § 404.1520c(b)(1). Of the five factors, supportability and consistency are the most important, and an ALJ must explain how the ALJ considered them. 20 C.F.R. § 404.1520c(b)(2). The ALJ "may" but "is not required to" explain how the ALJ considered the remaining factors. *Id.*

The "supportability" factor looks to how well the medical source supports the opinion with objective medical evidence from the record. *See* 20 C.F.R. § 404.1520c(c)(1). "In other words, the supportability analysis focuses on the physicians' explanations of the opinions." *Lavenia v. Comm'r of Soc. Sec.*, No. 3:21cv674, 2022 WL 2114661, at *2 (N.D. Ohio June 13, 2022) (quoting *Coston v. Comm'r of Soc. Sec.*, No. 20-12060, 2022 WL 989471, at *3 (E.D. Mich. Mar. 31, 2022)). The "consistency" factor looks to how consistent the medical opinion is with evidence from other medical and nonmedical sources. *See* 20 C.F.R. § 404.1520c(c)(2). "As long as the

ALJ discussed the supportability and consistency of the opinion and supported his conclusions with substantial evidence within his decision, the Court will not disturb his decision." *Njegovan v. Comm'r of Soc. Sec. Admin*., No. 5:21-CV-00002-CEH, 2022 WL 1521910, at *4 (N.D. Ohio May 13, 2022).

Mr. Grant argues that the ALJ erred in evaluating Dr. Hochman's opinions. In particular, Mr. Grant argues that the ALJ should have given weight to Dr. Hochman's opinions in his June 2021 medical source statement that Mr. Grant: could only sit for 60 to 90 minutes at a time and could only stand for 30 minutes at a time; would need a five to ten minutes break every 60 to 90 minutes; could only occasionally lift 10 pounds; would be off task 20-25% of the workday and would miss two to three days of work per month. Mr. Grant also argues that the ALJ erred in evaluating Dr. Hochman's January 2020 opinion that Mr. Grant could sit for four to five hours without breaks; walk for zero to two hours without breaks; and stand for zero to two hours without breaks.

The ALJ found that Dr. Hochman's opinions were unpersuasive, stating:

> The undersigned findings the opinions of Dr. Hochman, the claimant's Workers' Compensation physician, unpersuasive as they were not supported by the objective medical evidence discussed above, including the claimant's reports in the record and other clinical findings from the consultative physical examination and treatment records. (1F, 3-5, 27; 2F; 3F, 5, 8, 10; 4F, 5-13; 8F, 1, 4-7). Additionally, the earlier opinion provided in January 2020 was given for a state entity with different rules that are not binding on the Social Security Administration (20 CFR 404.1504). The opinions were somewhat consistent with each other and the testimony of the claimant, but were not consistent with the opinions of the State Agency physicians or the Consultative Physical Examiner Dr. Bradford.

(Tr. 26).

The Commissioner argues that the ALJ adequately addressed the supportability factor because the ALJ "considered how well the objective medical evidence supports Dr. Hochman's opinion." (ECF No. 7, PageID # 396). The Commissioner then cites to treatment notes from other

16

physicians, including imaging studies, Mr. Grant's physical therapy notes, and treatment notes from his acupuncturist. However, the supportability factor addresses how well the opinion is supported by the records and medical evidence that the *physician himself* relied on. *See Lavenia*, 2022 WL 2114661 at *2. That Dr. Hochman's opinion is potentially inconsistent with other evidence in the record speaks to the consistency factor, not supportability.

Although a close call, I nevertheless conclude that the ALJ's opinion adequately addressed supportability. In noting that Dr. Hochman's opinions were not supported by the objective medical evidence, the ALJ cited to Exhibit 3F, which is the exhibit in the administrative record containing Dr. Hochman's treatment notes. In particular, the ALJ cited to records from Dr. Hochman's notes which indicate that, on July 30, 2020, Mr. Grant stated his medications provided some relief, while his patellar deep tendon reflex was slightly diminished but symmetrical; that Mr. Grant stated on May 19, 2020 that his medications were helping; and that Mr. Grant had no distress and only mild discomfort on January 14, 2021. (Tr. 26) (citing Tr. 293, 296, 298).

Moreover, a reviewing court reads an ALJ's decision as a whole. *See Taylor v. Kijakazi*, No. 1:20-cv-01121, 2021 WL 4477865, *8 (N.D. Ohio Sept. 30, 2021). Earlier in the decision, the ALJ noted that, during examinations with Dr. Hoffman, Mr. Grant was generally in mild or moderate discomfort, stated that medication helped with his pain, displayed adequate strength through the ankle and symmetrical deep tendon reflexes, was not in distress, and reported that he had benefitted from physical therapy. (Tr. 22-24).

While it would have been preferable for the ALJ to cite to Dr. Hochman's treatment notes with more specificity in the portion of the decision analyzing his opinions, I conclude that the ALJ adequately addressed the supportability factor by citing to records indicating that the severity of the restrictions reflected in Dr. Hochman's opinions were not supported by his own treatment notes. *See Rattliff v. Comm'r of Soc. Sec.*, No. 1:20-cv-01732, 2021 WL 7251036, at *9 (N.D.

Ohio Oct. 29, 2021), *report and recommendation adopted*, 2022 WL 627055 (holding that ALJ addressed supportability factor by noting that physician's opinion was inconsistent with physician's treating notes); *Neff v. Comm'r of Soc. Sec.*, No. 5:18 CV 2492, 2020 WL 999781, at *11 (N.D. Ohio Mar. 2, 2020) (holding that ALJ properly addressed supportability factor by noting that physician's opinion was unsupported by her own treatment notes).

The ALJ also adequately addresses the consistency factor by noting that, while Dr. Hochman's opinions were somewhat consistent with each other and Mr. Grant's testimony, they were not consistent with other evidence in the record or the other medical opinions from the state agency physicians and Dr. Bradford. (Tr. 26). Again, a reviewing court reviews the record as a whole, and the ALJ's discussion of Dr. Hochman's opinion came after the ALJ spent several single-spaced pages summarizing the evidence in the record. Among other things, the ALJ noted that Mr. Grant had benefitted from physical therapy; showed adequate strength throughout the ankle and symmetrical deep tendon reflexes; had full range of motion in his knees; had five of five knee strength and an intact sensation to touch; experienced some relief from injections; and had an even and regular gait with no apparent limp. (Tr. 22-24).

While it would again have been preferable for the ALJ to specifically discuss these records while analyzing the consistency of Dr. Hochman's opinion, I nevertheless conclude that the ALJ adequately addressed the consistency factor by noting that Dr. Hochman's opinions were not consistent with other treatment records from the relevant period. *See Merrell*, 2021 WL 1222667 at *7 (holding that ALJ's decision to discount weight given to opinion from treating physician was supported by substantial evidence where opinion was inconsistent with evidence in the record); *Creter v. Saul*, No. 1:20-cv-00840, 2021 WL 809323, at *11 (N.D. Ohio Mar. 3, 2021) (holding that ALJ did not err where ALJ specifically cited treatment records ALJ believed were inconsistent with treating physician's opinion and explained why).

Mr. Grant does not argue that the ALJ failed to address the supportability or consistency elements at all. Instead, Mr. Grant argues that the ALJ erred in concluding that Dr. Hochman's opinions were inconsistent with those of the state agency physicians because the state agency physicians issued their opinions prior to Dr. Hochman's own opinions. It is well-settled, however, that an ALJ "may rely on medical opinions from physicians who have not reviewed the entire record so long as the ALJ considers the post-dated evidence in formulating his opinion." *Nichol v. Comm'r of Soc. Sec.*, No. 5:18 CV 1795, 2019 WL 4305767, at *11 (N.D. Ohio Sept. 11, 2019); *see also Houston v. Saul*, No. 1:20-CV-1371, 2021 WL 2635376, at *13 (N.D. Ohio June 25, 2021) ("It is well-settled that it is proper for an ALJ to credit a state agency consultant's opinion when it is supported by the totality of evidence in the record, and the ALJ considered the evidence obtained after the consultant issued his opinion.") (quotation omitted) (citing cases). Here, while the state agency physicians did not have the benefit of Dr. Hochman's opinions, the ALJ reviewed those opinions and found them unpersuasive.

Mr. Grant next argues that the ALJ should have discounted the opinions of the state agency physicians because those opinions relied on a misinterpretation of Dr. Bradford's opinion. In particular, Mr. Grant argues that the state agency psychologists relied on Dr. Bradford's diagnoses of spondylosis of the lumbar spine and degenerative joint disease in both knees, but ignored her opinion that Mr. Grant should be limited to the "light sedentary" level of exertion. Mr. Grant also argues that the ALJ erred in evaluating Dr. Bradford's statement that Mr. Grant should be limited to "light sedentary activity" by formulating an RFC that limited Mr. Grant to light activity rather than sedentary activity. As the Commissioner correctly notes, however, the ALJ rejected Dr. Bradford's opinion as vague to the extent she restricted Mr. Grant to "light sedentary activity." (Tr. 25). Mr. Grant does not meaningfully argue that the ALJ erred in finding Dr. Bradford's opinion vague to the extent it limited Mr. Grant to both light and sedentary work.

19

Finally, Mr. Grant argues that the ALJ's evaluation was erroneous because other evidence in the record is consistent with Dr. Hochman's assessment and would support a more restrictive RFC. However, "the Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence, supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). A reviewing court may not "try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *O'Brien v. Comm'r of Soc. Sec.*, 819 F. App'x 409, 416 (6th Cir. 2020) (quoting *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984)); *see also Anderson v. Comm'r of Soc. Sec.*, No. 1:21-CV-1471, 2022 WL 4545188, at *2 (N.D. Ohio Sept. 29, 2022) ("it is also well-established that as long as the ALJ cites substantial, legitimate evidence to support the conclusion reached, the reviewing court may not second-guess that decision"). I conclude that substantial evidence supports the ALJ's RFC and will not disturb the ALJ's findings simply because other evidence in the record may have supported a different conclusion. I therefore recommend that the Court reject Mr. Grant's first assignment of error.

### 2. SSR 16-3p

In his second assignment of error, Mr. Grant argues that the ALJ failed to properly apply Social Security Ruling ("SSR") 16-3p, which governs the Commissioner's evaluation of a claimant's subjective symptoms. SSR 16-3p provides that the SSA will conduct a two-step process in considering a claimant's symptoms. 2017 WL 5180304, at *3 (Oct. 25, 2017). At step one, the SSA determines whether the individual has one or more medically determinable impairments that could reasonably be expected to produce the individual's alleged symptoms. *Id*. If so, at step two, the SSA evaluates the intensity and persistence of a claimant's symptoms, such as pain, to determine the extent to which those symptoms limit the claimant's ability to work. *Id*. at *4.

With respect to a claimant's subjective statements, SSR 16-3p provides that the SSA will

"consider an individual's statements about the intensity, persistence, and limiting effects of symptoms" and "will evaluate whether the statements are consistent with objective medical evidence and the other evidence." *Id*. at *6. SSR 16-3p identifies seven factors that the SSA will consider in evaluating an individual's symptoms: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate symptoms; (4) the type, dosage, effectiveness, and side effects of any medication; (5) treatment an individual receives or has received other than medication; (6) any measures other than treatment an individual uses or has used; and (7) any other factors concerning the claimant's functional limitations and restrictions. *Id*. at *7-8. "The ALJ need not analyze all seven factors but should show that [the ALJ] considered the relevant evidence." *Phillips v. Comm'r of Soc. Sec. Admin.*, No. 3:22-CV-01144-JGC, 2023 WL 4078204, at *8 (N.D. Ohio Apr. 4, 2022).

Notably, "[a] plaintiff does not demonstrate a violation of SSR 16-3p simply by reiterating the same subjective symptoms she believes should have been credited by the ALJ, as an ALJ is not required to accept a claimant's subjective complaints." *Zingale v. Kijakazi*, No. 1:20-cv-02197, 2022 WL 824148, at *8 (N.D. Ohio Mar. 18, 2022); *see also Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003) ("an ALJ is not required to accept a claimant's subjective complaints"). Moreover, "[i]t is for the administrative law judge, not the reviewing court, to judge the consistency of a claimant's statements." *Lipanye v. Comm'r of Soc. Sec.*, 802 F. App'x 165, 171 (6th Cir. 2020). However, the ALJ's determinations must be reasonable and supported by evidence in the record. *See Zingale*, 2022 WL 824148 at *8; *Kurman v. Comm'r of Soc. Sec.*, No. 1:20-cv-01837, 2022 WL 765072, at *3 (N.D. Ohio Mar. 14, 2022) ("The ALJ's decision . . . must be rooted in the record and must contain specific reasons for the weight given to the [claimant's] symptoms.") (quotations omitted).

Here, the ALJ found that "the claimant's medically determinable impairments could

reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ." (Tr. 21). In particular, the ALJ found that Mr. Grant's subjective complaints were inconsistent with clinical findings demonstrating that Mr. Grant had a normal gait and ambulation; intact sensation to light touch in his lower limbs; normal strength in all muscles; 5/5 knee strength; negative ligament testing; full range of motion; adequate strength throughout the ankle; symmetrical deep tendon reflexes; no tenderness, pain, or trigger points; no distress; a normal straight leg raise test; and some improvement in his back and knee pain with medication, physical therapy, and injections. (Tr. 24-25).

The ALJ also considered contrary evidence, including x-rays showing mild to moderate degenerative changes in Mr. Grant's right hip; an MRI showing multilevel degenerative changes in his spine; a left knee x-ray showing suspected mild joint space narrowing and a trace suprapatellar joint effusion; midline lumbar discomfort; tenderness; pain with lumbar flexion, stressing of the knees, and straight leg raises; mild to moderate discomfort; and decreased lumbar spine range of motion. *Id.*  However, the ALJ concluded that the evidence, taken as a whole, was not fully consistent with Mr. Grant's subjective reports and that the RFC properly accounted for Mr. Grant's limitations.

I conclude that the ALJ properly considered the evidence as a whole in applying SSR 16-3p and evaluating Mr. Grant's subjective statements. The ALJ's decision is therefore supported by substantial evidence. *See Young v. Comm'r of Soc. Sec. Admin.*, No. 5:21-cv-00761, 2022 WL 17546359, at *6 (N.D. Ohio Dec. 9, 2022) (holding that ALJ complied with SSR 16-3p where ALJ evaluated the intensity and persistence of claimant's symptoms and determined extent to which those symptoms limited claimant's ability to perform work activities); *Myers v. Comm'r of Soc.*

*Sec. Admin.*, No. 1:21-CV-02381-SL, 2022 WL 18636593, at *8 (N.D. Ohio Dec. 2, 2022) (holding that ALJ complied with SSR 16-3p where ALJ considered claimant's subjective complaints of pain but did not find pain disabling), *report and recommendation adopted*, 2023 WL 369435. To the extent Mr. Grant believes the ALJ should have weighed the evidence differently, it is not a reviewing court's role to second-guess the ALJ's judgment. Accordingly, I recommend that the Court reject Mr. Grant's second assignment of error.

### 3. *Step Four*

In his third assignment of error, Mr. Grant argues that the ALJ erred at Step Four in concluding that Mr. Grant could perform his past work as a computer-aided design technician. The Commissioner responds that Mr. Grant's Step Four argument merely repeats his prior arguments that the ALJ should have crafted a more restrictive RFC. I conclude that the Commissioner's argument is well-taken.

At Step Four, the claimant must establish that he cannot perform his past work as actually or generally performed. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv). "Step Four is a two-step inquiry where the ALJ first considers where the claimant has the RFC to perform the functional demands and duties of a past job *as actually performed* by the claimant, and, if not, then proceeding to determine whether the claimant can perform the functional demands and job duties of the occupation as generally required by employers throughout the national economy." *Castro v. Kijakazi*, 3:20-cv-02259, 2022 WL 889378, at *10 (N.D. Ohio Mar. 25, 2022) (citing *Garcia v. Sec'y of Health and Human Servs.*, 46 F.3d 552, 557 (6th Cir. 1995)). The claimant has the burden of presenting evidence to the ALJ demonstrating that he cannot perform his past work. *See Norman v. Colvin*, No. 1:14-cv-2374, 2016 WL 11371448, at *3 (N.D. Ohio Jan. 4, 2016), *report and recommendation adopted sub nom*, 2016 WL 922741.

While the claimant has the burden of establishing that he could not perform his past work,

however, "the ALJ's decision must be, at a minimum, sufficiently clear to permit meaningful appellate review" of the ALJ's Step Four determination. *Johnson v. Comm'r of Soc. Sec.*, No. 1:18-cv-1656, 2019 WL 2270951, at *6 (May 28, 2019). In particular, the ALJ "must make specific factual findings regarding: (1) the claimant's RFC; (2) the physical and mental demands of the past job/occupation; and (3) whether the claimant's RFC would permit a return to his or her past job or occupation." *Langford v. Comm'r of Soc. Sec. Admin.*, No. 1:22-CV-00665-CEH, 2023 WL 3058160, at *28 (N.D. Ohio Apr. 24, 2023) (citing SSR 82-62, 1982 WL 31386 (S.S.A. Jan. 1, 1982)).

Mr. Grant argues that the ALJ erred at Step Four because "the medical evidence, testimony, and written statements in this matter demonstrated that the ALJ's finding that [he] could stand/walk the requisite 6 hours a day to perform work at the light level of exertion was contrary to the evidence and in error." (ECF No. 6, PageID # 385). Mr. Grant argues that the evidence instead establishes that he was limited to sedentary work, which would render him disabled given his age.

As the Commissioner correctly notes, Mr. Grant's argument does not challenge whether he could perform his past work given the RFC that the ALJ determined. Instead, Mr. Grant argues that the ALJ's RFC was erroneous because the ALJ misevaluated the medical and opinion evidence. Because I have already concluded that the ALJ did not err in evaluating the opinion evidence or Mr. Grant's subjective complaints, Mr. Grant's Step Four argument necessarily fails as well. I therefore recommend that the Court reject Mr. Grant's third assignment of error as well.

## VI.    RECOMMENDATION

Based on the foregoing, I RECOMMEND that the Court AFFIRM the ALJ's decision.

Dated: <u>August  3, 2023</u>                    <u>*s/ Jennifer Dowdell Armstrong*</u>
                                                Jennifer Dowdell Armstrong
                                                U.S. Magistrate Judge

## VII.    NOTICE TO PARTIES REGARDING OBJECTIONS

Local Rule 72.3(b) of this Court provides:

**Any party may object to a Magistrate Judge's proposed findings, recommendations or report made pursuant to Fed. R. Civ. P. 72(b) within fourteen (14) days after being served with a copy thereof, and failure to file timely objections within the fourteen (14) day period shall constitute a waiver of subsequent review, absent a showing of good cause for such failure**. Such party shall file with the Clerk of Court, and serve on the Magistrate Judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. **Any party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.** The District Judge to whom the case was assigned shall make a <u>de novo</u> determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. The District Judge need conduct a new hearing only in such District Judge's discretion or where required by law, and may consider the record developed before the Magistrate Judge, making a determination on the basis of the record. The District Judge may also receive further evidence, recall witnesses or recommit the matter to the Magistrate Judge with instructions

*Id.* (emphasis added).

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the report and recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the report and recommendation; a general objection has the same effect as would a failure to object. *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

Stated differently, objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same

25

argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, *2 (W.D. Ky. June 15, 2018) (quoting *Howard*). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).